## BARTON v. CHRESTMAN. (No. 1757.)*

(Court of Civil Appeals of Texas. El Paso. May 14, 1925. Rehearing Denied June 18, 1925.)

1. **Judgment ☞956(2)—Entire record may be examined to explain ambiguity in judgment on plea of res judicata, and extrinsic evidence admitted to show what was settled by judgment.**

On a plea of res judicata, entire record, including pleadings of suit in which judgment relied on was rendered, may be examined to explain any ambiguity in judgment itself, and extrinsic evidence is admissible to show what was involved and settled by judgment when record and judgment are uncertain, provided such evidence does not contradict record and judgment.

2. **Trespass to try title ☞47(1)—Unrestricted judgment for title and possession of land carries right to all fixtures permanently attached to realty.**

An unrestricted judgment for title and possession of land will carry with it right to all fixtures permanently attached to the realty by person from whom land is recovered, and which have become a part of realty, except when judgment exempts such fixtures from its operation.

3. **Trespass to try title ☞47(1) — Personal property not affected by a judgment for the land.**

Personal property, which happens to be on the land, is not affected by a judgment for the land, and any provision in decree as to title of personal property is wholly alien to such judgment.

4. **Judgment ☞956(2)—Exclusion of evidence showing what was involved and settled by judgment in another action held reversible error.**

In suit to restrain levy of execution on judgment rendered in suit of trespass to try

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

*Writ of error dismissed for want of jurisdiction November 25, 1925.

275 S.W.—26

title to land which had been leased to defendant on ground that personal property levied on was affixed to realty and thereby belonged to plaintiff, exclusion of count in plaintiff's petition in former suit, which explained decree, and showed that its effect was to give defendant personal property placed on land prior to a certain date, and that such relief was given defendant under lease, *held* reversible error.

**5. Judgment ⊂⇒956(2)—Admissibility of count in plaintiff's petition showing what was involved and settled by judgment in another action held not affected by fact that plaintiff recovered on another count.**

In suit to restrain levy of execution on judgment rendered in suit of trespass to try title to land leased to defendant, admissibility of second count of plaintiff's petition in former suit to show what was involved and settled by judgment therein was not affected by fact that plaintiff recovered land in that suit on first count of his petition, since both counts will be looked to in determining question of res judicata.

**6. Appeal and error ⊂⇒1177(7) — Reviewing tribunal could not render judgment which should have been rendered by lower court because of improperly excluded evidence.**

Reviewing tribunal could not render judgment which should have been rendered by lower court, though evidence which would have clearly shown plaintiff had no cause of action was improperly excluded.

Appeal from District Court, Comanche County; J. R. McClellan, Judge.

Suit by Joe E. Chrestman against L. R. Barton and others, with cross-action by named defendant. Judgment for plaintiff, and the defendant named appeals. Reversed and remanded.

Ghent Sanderford and Callaway & Callaway, all of Comanche, and Paddock, Massingill & Belew, of Fort Worth, for appellant.

Jerome P. Kearby, of Comanche, for appellee.

HIGGINS, J.   On December 2, 1919, appellee, Chrestman, executed an oil and gas lease to Homar Peeples, covering 23 acres of land. The lease provided that the "lessee shall have the right at any time to remove all machinery and fixtures placed on said premises, including the right to draw and remove casing." Peeples assigned the lease to appellant, Barton.

Subsequently Chrestman sued Barton and others in the district court of Comanche county, the suit being numbered 6735, and judgment was therein rendered on May 8, 1923. The judgment from which the present appeal is prosecuted was rendered in further litigation subsequently arising.

In cause No. 6735 Chrestman's petition was in two counts, but only the first count thereof was in evidence. This count was offered by Chrestman, and is in the usual form of trespass to try title. Barton answered in No. 6735, by general denial and plea of not guilty and special plea, that, if any ground of forfeiture of the lease had arisen, it had been waived by Chrestman; that by the terms of the lease it was to remain in effect so long as oil or gas was produced in paying quantities, and that the lessee was permitted at all times to pull and remove the casing and all equipment thereon; and, if it appeared oil and gas could not be produced in paying quantities, that he have judgment for such casing and equipment and permission to remove the same.

By way of cross-action Barton in No. 6735 also set up that he was the owner of all personal property upon the leasehold, including casing, pipe lines, sucker rods, jacks, pumps, connections, and gasoline engines. of the value of $2,000, which, it was alleged, had been converted by Chrestman, and for which amount he prayed judgment.

Upon the trial of that case an instructed verdict was returned, upon which judgment was rendered as follows: In favor of Chrestman against Barton and his codefendants for the land upon the first count of trespass to try title; in favor of the defendant Tom Myrick against Barton and his codefendants for the sum of $1,058.00 and interest, of which amount $120 was adjudged to be secured by a laborer's lien on "the oil wells and appurtenances thereto on said 23 acres of land," which lien was foreclosed and order of sale directed to issue; that Barton take nothing by his cross-action; "that defendant, L. R. Barton, recover of all parties hereto the personal property situated upon said 23 acres leasehold at the time this suit was filed herein, namely, July 19, 1922, and it is further ordered that plaintiff, J. E. Chrestman, recover of all parties hereto all personal property placed on said lease and said 23 acres of land since the filing of this suit on July 19, 1922."

With reference to the judgment in favor of Myrick the judgment contained this further provision:

"Upon collection of said $120 or payment thereof of or by plaintiff, J. E. Chrestman, in order to protect the title to the property adjudged to the plaintiff herein, said plaintiff, J. E. Chrestman, shall be subrogated for said sum or so much thereof as may be collected from or paid by said J. E. Chrestman, against all the defendants herein and hereto, except Tom Myrick."

Chrestman paid the $120 to Myrick, and upon November 12, 1923, caused to be issued an ordinary execution upon the judgment against Barton and his codefendants for the collection of said $120 and $84.43 costs of the suit.

By direction of Chrestman the sheriff,

acting through his deputy, T. M. Marshall, levied the execution upon certain property thus described in the levy indorsed upon the writ:

"Two Novo gas engines, one (1) Fairbanks gas engine; about 400 feet of 2-inch pipe connecting wells to tanks; one (1) 250 barrel steel bolted Parkersburg tank; one (1) 100 barrel corrugated iron tank; about 140 feet of 6⅝ inch casing, stacked on the ground; one (1) box shack, about 12 by 20, all· of the above described personal property now situated on a certain 23 acres of land, out of J. E. Chrestman survey, in Comanche county, Tex., abstract No. 1816, being the same property in controversy in this cause, and on which certain oil wells are now being operated; also one set of derrick timbers, and all rig irons now on the right of way of the Katy railroad at Sipe Springs, Tex."

The property thus seized was advertised for sale upon ·December 29, 1923. Upon the date of sale Chrestman undertook to direct the officer conducting the sale as to the or-· der in which the various articles should be sold, which the officer declined to follow, whereupon Chrestman directed the officer to release the levy and return the execution. This the officer declined to do, and sold the property; Barton becoming the purchaser.

On January 1, 1924, the present suit was filed by Chrestman against Barton, L. F. Marshall, the sheriff of Comanche county, and his deputy, Tom Edwards, the latter being the officer who· had made the levy and sale aforesaid. The amended petition upon which the case was tried sets up the issuance and levy of the execution and advertisement as aforesaid; that the 400 feet of 2-inch pipe and box shack described in the levy was not subject to the levy and sale, because it was affixed to the realty and a part of said 23 acres which belonged to plaintiff; that on the date of sale plaintiff demanded of Edwards that he first· sell the derrick, timbers, and rig irons on the right of way at Sipe Springs, and upon refusal of the officer so to do he directed Edwards to release the entire levy, and not further execute the writ, and return the same without sale as upon his request, which Edwards refused to do, and sold the derrick and irons for $210, and further· demanded of Edwards that he not execute any bill of sale for said property to the purchasers, which Edwards refused to do, and accepted bids and executed bills of sale, and was threatening to deliver possession of said property to the purchasers; that there were several producing oil wells on the 23 acres, and the 250 barrel tank described in the levy was a storage tank for the reception of the oil from the wells; that the 2-inch pipe described in the levy connected the wells with the tank and the oil pipe lines, and the removal of such property would necessitate shutting down the wells, and a trespass upon his property of great and irreparable injury and damage impossible of ascertainment; that such property (250 barrel tank and 2-inch pipe), as well as a box shack on the 23 acres all belonged to plaintiff, and was a part of the realty, and, independent of· the land, was worth $600 or more; that the levy upon said property and sale, as personal property, was void, because it was a part of the realty; that the sale was also void because he had a right to release the levy and control the return of the execution without the sale; that upon the original petition filed the court had enjoined Marshall, the sheriff, and Edwards, the deputy, on January 1, 1924, but thereafter, on January 8th, Barton acting under a bill of sale executed by the deputy sheriff and over the protest of plaintiff, had entered upon the 23 acres, and removed therefrom the 400 feet of 2-inch piping, and on the 9th of January had entered upon the premises and disconnected said tank from the pipe line and removed the same, in consequence òf which plaintiff was forced to shut down the well, all of which damaged plaintiff in the sum of $1,000; that Barton is now threatening to pull the pull rods and casings of four producing wells on the land, and to remove the same and convert it, which would inflict great and irreparable injury, and plaintiff fears that Barton will also remove the derricks over said wells, unless restrained, which derricks are necessary for the proper care and maintenance of the wells; that in cause No. 6735 plaintiff recovered judgment "for the title and possession of said 23 acres of land hereinbefore described, together with all and singular the rights, members, hereditaments, and appurtenances thereto belonging, or appertaining"; and that "all of the aforesaid property, complaint at the removal of which, or threatened removal thereof, is made, is appurtenant to said 23 acres of land, and by said judgment passed to this plaintiff, and said defendants have no right thereto."

Judgment was prayed as follows: That the sheriff and his deputy be restrained from entering upon the premises or taking possession of either the tanks levied upon, the 2-inch pipe, or shack, ·and from delivering or attempting .to deliver said property to any purchaser at the sale aforesaid, and from making any return of the execution that any money had been collected. thereunder, and for a mandatory injunction requiring the sheriff and· his deputy to return the writ unexecuted by sale upon the plaintiff's order; that Barton be enjoined from removing off of the 23 acres any of said property then remaining upon the premises, and from disposing of the same in any way, or disposing of property which had been removed from the premises, and for a mandatory injunction against Barton to return to the premises all the property which he had taken away, and to replace the same as it was before dis-

connected and removed by Barton, and for the damages set up in the petition.

Barton answered by general exception and a number of special exceptions, also by general denial and special plea; in substance setting up the following: That all of the property involved in the controversy was placed on the land under the oil and gas lease heretofore mentioned, of which lease he was the assignee; that provision of the lease was pleaded, setting up the right of removal, the institution by the plaintiff of the suit No. 6735, the rendition of the judgment therein on May 8, 1923, by which judgment he was awarded all of the personal property situated upon the leased land on July 19, 1922. In brief the defensive matter of the answer set up that the property in controversy was personal property which had been adjudged to the defendant, Barton, by the judgment rendered in No. 6735.

By cross-action Barton further set up that of the the personal property so decreed to him Chrestman had converted certain portions thereof, describing the same, of the value of $3,307.50, for which amount he prayed judgment over. By supplemental petition the plaintiff set up the judgment in 6735, and claimed that the judgment rendered therein vested title in him to the property in controversy as a part of the realty.

The case was submitted upon special issues, which, with the answers returned, are as follows:

"Special Issue No. 1: How many producing wells, if any, were on the 23 acres of land described in the pleadings of the parties, on the 19th day of July, 1922? In answer to this issue state the number of producing wells, if any, there was upon said tract of land on said lease.

"Answer: Three producing wells.

"Special Issue No. 2: How many of the five wells that the evidence shows that at one time produced oil were not producing oil on the 19th day of July, 1922?

"Answer: Two.

"Special Issue No. 3: What property, if any, was situated and located on said 23 acres of land other than such equipments as was necessary for the operation of the producing wells then and there situated on said 23-acre tract of land on the said 19th day of July, 1922? In answer to this question state as fully and accurately as you can each and every article of property that you find was not necessary for the proper operation of the producing wells on said land, giving the kind and character of the property as fully and as accurately as you can.

"Answer: 40 to 60 feet surface casing; 260 to 285 feet 6⅝ casing; 260 to 270 feet 2″ tubing; 260 to 270 feet sucker rod; one working barrel, complete; one engine 1¼ to 2 H. P., 20 joints flow pipe; and all equipment that was with well No. 5, including engine.

"Special Issue No. 4: What personal property, if any, has the plaintiff, J. E. Chrestman, converted to his own use and benefit since the 19th day of July, 1922, other than such property as was connected to and used in connection with the producing wells on said 23 acres of land? If in answer to this issue you should find that the plaintiff has not converted any of such property to his own use, your answer should be 'None.' If in answer to this issue you should find that the plaintiff has converted any of said property to his own use, then in the event you so find, fully set forth and describe the property you find that he has so converted giving the kind and character of the same.

"Answer: One corrugated Yale tank; 2 gas engines; ½ horse Monitor; 1–1¼ H. P. Fairbanks Morris; 3 or 4 joints 6⅝ casing.

"Special Issue No. 5: If in answer to the last question you have found that the plaintiff has converted to his own use any property located on said 23 acres of land other than such as was necessary for the proper operation of the producing wells on said land, then in answer to this issue state in dollars and cents the amount you find to be the value of the property so converted.

"Answer: One Galv. tank........ $50.00
2 engines .............. 64.00
3 or 4 joints 6⅝ casing.. 46.80
—————
$161.80."

Judgment was rendered in substance as follows: The sheriff and his deputy were directed to return the levy of the execution released by order of the plaintiff and the district court of Comanche county, and the writ returned unexecuted; that all proceedings of sale were void; Marshall and his deputy were enjoined from taking possession of any of the property levied upon, or selling the same; that Chrestman recover of Barton the 250 barrel tank and the 2-inch piping connected to wells 1, 3, and 4, being the same property removed by Barton on January 8th and 9th, and Barton was mandatorily ordered to replace the same on the premises and connect it up as it was before he removed it; that Chrestman recover of Barton the 100 barrel tank described in the levy, and certain 6⅝-inch casing, and as against Barton the title to two engines sold by the plaintiff to Will Petitt be vested in Chrestman; that Chrestman recover of Barton all equipment of wells 1, 3, and 4 on the 23 acres, including all casing, tubing, sucker rods, working barrels, cylinder valves, packers, heads, connections, jacks, derricks, masts, and also the 12 by 20 foot shack, and all other property of every character, except certain property awarded to Barton, and Barton is perpetually enjoined from in any manner interfering with the title or possession of the plaintiff; that Barton recover of Chrestman upon his cross-action $161.80, which was offset against Chrestman's judgment as assignee of Myrick. Barton was awarded all equipment in nonproducing wells 2 and 5, consisting of certain casing and tubing and sucker rods, also the working barrel and engine. There are numerous other provisions in this lengthy judgment which need not be quoted.

From the judgment rendered Barton appeals.

The property involved in the present litigation was placed upon the 23 acres by Barton or his assignor, Peeples, prior to July 19, 1922. The controlling question in the case is the effect to be given to that portion of the judgment in cause No. 6735, whereby Barton was awarded all personal property situate upon the land on the date last mentioned, and to Chrestman was awarded all personal property placed on the land after that date. A provision of this kind is wholly alien to a judgment for land, and in this respect the judgment is ambiguous.

[1] It is well settled that upon a plea of res judicata the entire record, which includes the pleadings, of the suit in which the judgment relied upon was rendered may be examined for the purpose of explaining any ambiguity in the judgment itself. Dunlap v. Southerlin, 63 Tex. 38; Boykin v. Rosenfield (Tex. Civ. App.) 24 S. W. 323.

Not only may the record be examined for this purpose, but extrinsic evidence is admissible to show what was involved and settled by the judgment when the record and judgment leave this matter in uncertainty, provided such evidence does not contradict the record and judgment. Reast v. Donald, 84 Tex. 648, 19 S. W. 795, and other cases cited in 15 Michie Digest, 182; 23 Cyc. 1535–1539, and 1542.

[2, 3] It is the contention of the appellee that the judgment in his favor for the title and possession of the 23 acres, together with "the rights, members, hereditaments, and appurtenances thereto belonging or appertaining," carried with it all of the personal property placed upon the land by Barton and his assignor prior to July 19, 1922, and permanently attached to the realty. It is true an unrestricted judgment for the title and possession of land will carry with it the right to all fixtures permanently attached to the realty by the person from whom the land is recovered, and which have become a part of the realty, but this is not true when the judgment exempts such fixtures from its operation. The judgment in No. 6735 denied Barton any recovery upon his cross-action. That feature of the judgment had reference to the claim for damages for an alleged conversion by Chrestman of the personal property, and was the only cross-action set up. It gave Barton judgment for the personal property situate upon the land before July 19, 1922, and Chrestman all personal property placed thereon since that date. As heretofore stated, a provision of that kind is wholly inapplicable in a judgment involving the title to realty. Personal property which happens to be on the land is not affected one way or the other by a judgment for the land. It is therefore highly pertinent to inquire in what sense the court in said judgment used the term "personal property"; to what it referred, and what it meant.

[4] Upon the trial appellant offered in evidence a paragraph of the second count of Chrestman's petition in No. 6735, reading as follows:

"That defendants, in order to operate said wells, placed casing, tubing, and pumps and jacks therein and thereon, and connected same up with pipe lines and tanks thereon, and with pumping engines; that the entire value of the personal property placed on said 23 acres by said defendant is approximately $1,000; that defendants will probably attempt to remove said personal property and to draw said casing from said wells pending this suit; that by reason of their negligence and the breach of the conditions and terms of said lease plaintiff claims and asserts an equitable lien against all of the personal property placed thereon by defendants, including jacks, tanks, casing, tubing, pipe lines, sucker rods, cylinders, etc., used or incident to the operation of said wells, including engines, and saving the oil produced therefrom. That defendants have no other property, within the knowledge of plaintiff, out of which said damages could be made, and, if same be removed or said casing pulled, it will result in irreparable damage to the said wells on said property, and to said land, and to this plaintiff, as same would ruin said wells and said property as a paying, producing oil property, as it would now be, but for the shutdown of said wells by the negligence and wrongful acts of the defendants."

This paragraph in connection with the entire pleadings in the case shows very clearly what personal property the decree referred to, and that its effect was to give to Barton all personal property of the kind described in said paragraph which he and his assignor had placed on the land prior to July 19, 1922, and that such relief was given Barton under that provision in the lease giving him the right to remove all machinery and fixtures placed on the premises, including the right to remove and draw casing. The excluded evidence was controlling upon the vital issue in the case, and its rejection necessitates reversal.

[5] The appellee insists that the excluded evidence was inadmissible because it was in the second count of his petition, and he recovered the land upon his first count in the ordinary form of trespass to try title. We fail to see the force of this objection. Carver Bros. v. Merrett (Tex. Civ. App.) 155 S. W. 633; Evans v. McKay (Tex. Civ. App.) 212 S. W. 680.

In Carver Bros. v. Merrett, it was said:

"While the court in rendering his judgment may have considered only one count of the amended petition, yet both counts would be looked to in afterwards determining the question of res adjudicata."

It is manifest from an instruction given by the trial judge that he recognized the controlling issue in the case to be the effect to

be given to that portion of the judgment in No. 6735, giving to Barton the personal property placed upon the land prior to July 19, 1922, and to Chrestman that placed upon the land after that date. However, from the issues submitted and the judgment rendered, he seems to have regarded the personal property awarded to Barton as that which was in connection with the nonproducing wells, and to Chrestman that connected with producing wells. The judgment prescribes no such test, but awarded unconditionally to Barton the personal property placed upon the land prior to July 19, 1919.

[6] The excluded evidence would have clearly shown appellee has no cause of action, but this court cannot render the judgment which should have been rendered by the lower court, because improperly excluded evidence cannot be the basis of a judgment rendered by this court. Eidson v. Reeder, 101 Tex. 202, 105 S. W. 1113.

Appellant presents a great number of assignments and propositions, none of which present any merit, except those raising the question discussed.

Reversed and remanded.